IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

2019 AUG 29 PM 2: 03

| | | |
|---|---|---|
| DARRELL BOOKER,<br>Institutional ID No. 2143709,<br>SID No. 3432284,<br><br>  Plaintiff,<br><br>v.<br><br>CHARLES MCDUFFIE, *et al.*,<br><br>  Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 5:18-CV-208-BQ |

## **REPORT AND RECOMMENDATION AND ORDER OF TRANSFER**

This case was transferred to the magistrate judge by order dated December 7, 2018. ECF No. 18. In accordance with said order, the undersigned conducted preliminary screening as described in 28 U.S.C. §§ 1915(e)(2) and 1915A(b) and determined that Booker's individual capacity claims against Texas Department of Criminal Justice (TDCJ) Warden Charles McDuffie under the First and Fourteenth Amendments, and for retaliation, survive preliminary screening. ECF Nos. 39, 40. Consequently, the Court entered an order requiring Warden McDuffie to answer or otherwise plead to Booker's claims. ECF No. 39. Warden McDuffie filed his answer on August 7, 2019. ECF No. 49. As of today's date, all parties have not consented to jurisdiction by the magistrate judge. Upon review of Warden McDuffie's Answer, it is the opinion of the undersigned that this matter must be transferred to the district judge for further proceedings.

I. **Discussion**

**A. Booker's Factual Allegations**

Booker states that he has been a practicing Muslim since 1987. Tr. 1:59:44. He asserts that between February 28, 2017, and October 2018,[1] Warden McDuffie did not permit him (or any other Muslim in the Formby Unit) to use the chapel for worship. *See* Compl. 10, ECF No. 1; Questionnaire 1–6; Tr. 2:02:16–:24. According to Booker, Muslims at the Formby Unit had regularly scheduled worship time on Fridays between noon and 2:00 p.m.; however, although the chapel was available during that period, Booker asserts McDuffie did not permit Muslims to use it. Tr. 2:10:54–:11:11. Instead, Warden McDuffie allegedly required Muslims to worship in the multipurpose room. *See* Compl. 10, 69; Questionnaire 4–6. Booker claims the motivation for Warden McDuffie's decision was Booker's religion rather than logistical issues or other neutral factors. *See* Comp. 10; Tr. 2:10:54–:11:11. After Warden McDuffie left the Formby Unit, Booker claims the new warden permitted Muslims to use the chapel during the allotted time. Tr. 2:02:45–:03:05, Tr. 2:21:21–:30.

At the *Spears* hearing, Booker averred that the multipurpose room was inadequate for worship because it: (1) was too small; (2) had no air conditioning, windows, or sufficient ventilation; and (3) had no running water or restrooms inside the building.[2] Tr. 2:06:20–:07:09. Booker alleges the conditions in the multipurpose room prevented him from performing wudu as

---

[1] Booker's allegations regarding the dates are inconsistent. At the *Spears* hearing, he initially reported that the Warden denied him use of the chapel until March 23, 2018. Tr. 2:02:16–:24. Later in his testimony, however, he stated that the Warden denied him use of the chapel until October 2018. Tr. 2:24:11–:44. In his questionnaire responses, Booker lists dates between March and July 2018. Questionnaire 1, ECF No. 33. At this stage of the proceedings, the Court does not find that determining the exact dates of the alleged denials is required for properly screening Booker's claims.

[2] Booker explained that there were facilities outside the multipurpose room, but they were covered in bird feces, which prevented him from using them to perform wudu, an Islamic ritual involving washing parts of the body with water. Tr. 2:18:15–:19:06. Moreover, Booker claims the guards generally prevented him and other inmates from returning to the multipurpose room once they exited.

needed and caused him to have a dry mouth and become nauseated; he further contends that he sometimes did not hold services due to extreme heat.[3] Tr. 2:09:01–:30, 2:12:13–:13:11, 2:14:36–:15:05, 2:16:10–:19, 2:17:05–:59. Booker claims he personally spoke with Warden McDuffie approximately ten times between February 2017 and October 2018 and requested that he and other Muslims be permitted to use the chapel for worship so they could perform wudu as needed. According to Booker, the Warden's response was basically you will meet where I tell you to meet (stating "wherever he assigns [prisoners] to hold services is where" they will be conducted). Tr. 2:20:32–:21:20, 2:21:32–:42.

Booker also alleges that Warden McDuffie prevented him from practicing his religion while in pre-hearing detention. Compl. 13; Questionnaire 10–15. Specifically, Booker asserts that on May 22, 2018, after Formby Unit officials placed him in pre-hearing detention on May 20 for committing a rule violation (Compl. 13), Warden McDuffie removed him from the Ramadan list.[4] Tr. 2:27:00–:44, 2:28:12–:38. Based on this removal, Booker claims he was not allowed to attend religious services (including morning and/or evening prayers[5] and Jumah) and did not receive Ramadan-compliant halal meals. *See* Compl. 13; Questionnaire 10–15; Tr. 2:29:20–:42. Because he did not receive Ramadan meals, Booker alleges that he was forced to choose between breaking a tenet of his faith (i.e., eating non-halal meals during hours that his faith dictates he should fast) and going without food. Tr. 2:31:15–:42, 2:33:29–:47, 2:38:58–:39:41, 2:43:50–:44:51. Booker states that on May 24, 2018, officials released him from the pre-hearing detention cell back to

---

[3] At the *Spears* hearing, Booker explained that he was the designated Muslim coordinator. As the coordinator, he was in charge of conducting Islamic services. Tr. 2:08:19–:40.

[4] Booker asserts that Ramadan began May 17 and ended June 16, 2018. Tr. 2:41:20–:45.

[5] The Court understands Booker as making two separate allegations related to his removal from the Ramadan list: (1) he either received no Ramadan lay-in (i.e., a pass to leave his cell and attend prayer services) or only one lay-in, either morning or evening during the month of Ramadan (*see* Questionnaire 2–3); and (2) he did not receive Ramadan meals (i.e., halal or kosher meals prepared by a Muslim and served in the mornings to "break" fast and evenings after sundown). *See* Questionnaire 7–8, 12; Tr. 2:33:11–:25.

general population, but Warden McDuffie did not place him back on the Ramadan list. Tr. 2:37:05. According to Booker, officials did not place him back on the list until November 28, 2018, when he was transferred to the TDCJ Neal Unit. Tr. 2:41:54–:42:05.

Booker further avers that on May 20, 2018, when officials placed him in pre-hearing detention, they confiscated his property, including his Quran, and Warden McDuffie made the decision not to return his Quran despite Booker's specific requests.[6] Tr. 2:45:25–:46:14, 2:47:45–:52. As a result, Booker alleges that he did not have his Quran during Ramadan and could not read certain portions from it as prescribed by his faith. Tr. 2:48:39–:50. Booker claims that Warden McDuffie never returned his Quran, thus depriving him of access to a Quran for six months and requiring him to purchase a new one at the TDCJ Neal Unit on November 30, 2018. Tr. 2:46:55–:47:30. Finally, Booker also asserts that Warden McDuffie retaliated against him for filing grievances and voicing concerns about denial of access to the chapel. Compl. 11; Questionnaire 17–20. Booker identifies his January 22 to 31, 2018, transfer to the Wheeler Unit (which does not have Islamic services), removal from the Ramadan list, and the confiscation of his property as retaliatory acts. Questionnaire 18; Tr. 2:15:38–:55.

Based on the foregoing allegations, the undersigned previously found that Booker's First and Fourteenth Amendment claims, and retaliation claim, survive preliminary screening. *See* Order for Def. to Answer Certain Claims and for Dismissal of Certain Claims 2, 14, ECF No. 39.

### B. First Amendment Claims

Booker generally asserts that Warden McDuffie's actions violated his First Amendment rights. *See* Compl. 9, 12–13. Booker does not specify, however, whether he intends to bring a claim under the Free Exercise Clause, the Establishment Clause, or both. *See id.* Because Booker

---

[6] Booker contends that McDuffie similarly confiscated other Muslims' religious property upon placement in pre-hearing detention but did not confiscate the religious materials of inmates of other faiths. Tr. 2:48:00–:23.

4

is proceeding pro se and his allegations, liberally construed, arguably implicate both clauses, the Court addresses both.

### 1. *Free Exercise Clause*

A prisoner's First Amendment rights are violated when he is not afforded "reasonable opportunity" to exercise his religious beliefs. *Davis v. Davis*, 826 F.3d 258, 265 (5th Cir. 2016) (quoting *Cruz v. Beto*, 405 U.S. 319, 322 (1972) (per curiam)). "Whether a prison regulation impermissibly encroaches upon a prisoner's First Amendment rights depends upon whether it is 'reasonably related to legitimate penological interests.'" *Butts v. Martin*, 877 F.3d 571, 584 (5th Cir. 2017) (quoting *Mayfield v. Tex. Dep't of Criminal Justice*, 529 F.3d 599, 607 (5th Cir. 2008)); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342, 351–52 (1987) (holding that prison officials are not required to sacrifice legitimate penological objectives to accommodate inmates' religious practices). Courts should consider the four factors identified by the Supreme Court in *Turner v. Safley*, 482 U.S. 78 (1987) in determining the reasonableness of a prison regulation that allegedly impinges on a prisoner's constitutional rights:

> (1) [W]hether a "valid, rational connection [exists] between the prison regulation and the legitimate governmental interest put forward to justify it," (2) whether there exist "alternative means of exercising the fundamental right that remain open to prison inmates," (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally," and (4) whether there is an "absence of ready alternatives" to the regulation in question.

*Adkins v. Kaspar*, 393 F.3d 559, 564 (5th Cir. 2004) (quoting *Turner*, 482 U.S. at 89–90). The foregoing "standard [also] applies to challenges based on prison authorities' actions as [opposed to actual] prison regulations." *Butts*, 877 F.3d at 585 (citing *Jackson v. Cain*, 864 F.2d 1235, 1248 (5th Cir. 1989)).

Booker contends that Warden McDuffie unconstitutionally encroached on the free exercise of his religion in several ways. First, Booker asserts that Warden McDuffie required him to worship in the multipurpose room instead of the chapel, which inhibited his ability to practice his religion because without air conditioning, running water, and restroom facilities, (1) he could not perform wudu in accordance with a tenet of his faith, (2) it was sometimes too hot to worship, and (3) the room was too small to adequately worship with other Muslims. Booker further claims that Warden McDuffie impermissibly removed him from the "Ramadan list" after officials placed Booker in pre-hearing detention for committing a rule violation. His removal from the list, Booker avers, prevented him from attending religious services (including morning and/or evening prayers and Jumah) and receiving Ramadan-compliant halal meals. Finally, Booker states that officials confiscated his property while in pre-hearing detention, including his Quran, and Warden McDuffie made the decision to not return his Quran even after his release from pre-hearing detention and in spite of Booker's specific requests for its return. As a result, Booker alleges that he did not have his Quran during Ramadan and could not read certain portions from it as prescribed by his faith.

At this stage of the proceedings, Booker's allegations, taken as true, state a claim sufficient to survive preliminary screening, i.e., an individual capacity claim against Warden McDuffie alleging a violation of his right to free exercise under the First Amendment. *See, e.g., DeMarco v. Davis*, 914 F.3d 383, 389–90 (5th Cir. 2019) (reversing district court's dismissal at screening of prisoner's free exercise claim and remanding for district court to "determine whether the alleged confiscation [of his religious materials] was reasonably related to a legitimate penological objective"); *Baranowski v. Hart*, 486 F.3d 112, 120–21 (5th Cir. 2007) (affirming district court's grant of summary judgment in favor of TDCJ defendants on prisoner's claim that TDCJ's failure

to allow Jewish prisoners use of the chapel violated his First Amendment rights *only after* TDCJ put forth summary judgment evidence demonstrating that "valid penological objectives, including security, staff and space limitations, and financial burdens, justify TDCJ's policies, and that [prisoner] has alternative means of practicing his religion"); *Brown v. Groom*, 174 F. App'x 847, 849 (5th Cir. 2006) (affirming district court's denial of summary judgment in favor of defendants on prisoner's First Amendment claim that defendants refused to permit him to attend worship services and fast during month of Ramadan); *Thompson v. Solomon*, No. 92-8240, 1993 WL 209926, at *2 (5th Cir. June 2, 1993) (holding district court erred in summarily dismissing prisoner's First Amendment claim as frivolous, where court had not factually developed prisoner's contention that defendants refused to accommodate his observance of Ramadan); *Malik v. City of N.Y.*, No. 11 Civ. 6062(PAC)(FM), 2012 WL 3345317, at *12 (S.D.N.Y. Aug. 15, 2012) (denying defendants' motion to dismiss where prisoner alleged that defendants destroyed his Quran in violation of the Free Exercise Clause); *Shaw v. Norman*, Civil Action No. 6:07cv443, 2008 WL 1912910, at *1, *3 (E.D. Tex. Apr. 28, 2008) (recommending, inter alia, that prisoner's First Amendment claim survives screening where prisoner alleged that defendants confiscated and destroyed religious materials, including a Quran, and removed him from the Ramadan list).

### 2. *Establishment Clause*

Under the First Amendment's Establishment Clause, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. "The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982). As the Supreme Court has recognized, the "constitutional prohibition of denominational preferences is inextricably connected with the continuing vitality of the Free Exercise Clause." *Id.* at 245.

"The Supreme Court has not directly addressed the standard of review that applies when inmates assert a violation of the Establishment Clause, and more particularly, whether the applicable standard may depend upon the specifics of the claim." *Brown v. Collier*, 929 F.3d 218, 242 (5th Cir. 2019). In a claim similar to the one Booker asserts herein, however, the Fifth Circuit recently applied *Turner*'s "reasonableness" standard—i.e., the standard used to evaluate claims under the Free Exercise Clause. *See id.* at 243–44 (Owen, J.).

Here, Booker avers that Warden McDuffie afforded some faiths more favorable treatment than Muslims. *See* Compl. 10 ("The Muslims on the Formby Unit are being treated differently due to being Muslims."); Questionnaire 10 ("TDCJ-officials [including McDuffie] has [sic] made it a policy to deny Muslims access to the chapel and Halal foods."). Specifically, Booker contends that of the faiths that were permitted to congregate for worship, Muslims were the only ones not permitted to use the chapel, despite the chapel being available during their scheduled worship time. He also asserts that McDuffie confiscated religious materials of Muslims upon their placement in pre-hearing detention but did not confiscate the religious materials of inmates of other faiths. At this stage of the proceedings, the Court concludes that Booker has stated a claim sufficient to survive preliminary screening.

### C. Equal Protection Claim

Booker's equal protection claim arises under the Fourteenth Amendment. "To maintain his equal protection claim independently of his free exercise claim, [Booker] must allege . . . that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439–40 (1985)). "'Discriminatory purpose in an equal protection context implies that the decisionmaker selected a

particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group.'" *McAlister v. Livingston*, 348 F. App'x 923, 937 (5th Cir. 2009) (quoting *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995)). Prisoners of various religious denominations need not "receive 'identical facilities or personnel,' but rather . . . 'reasonable opportunities . . . to exercise the religious freedom guaranteed by the First and Fourteenth Amendment without fear of penalty.'" *Id.* (quoting *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972)).

Here, Booker asserts that Warden McDuffie discriminated against him based on his Muslim faith. *See* Compl. 10. Specifically, Booker alleges that the Warden required him, and all practicing Muslims, to worship in the multipurpose room instead of the chapel because of an animus toward his religion. *See id.* Booker further claims that on May 22, 2018, after Formby Unit officials placed him in pre-hearing detention on May 20 for committing a rule violation (Compl. 13), Warden McDuffie removed him from the Ramadan list and approved the continued confiscation of his property, including his Quran. Because McDuffie refused to return his Quran and removed him from the Ramadan list, Booker states that he: was not permitted to attend religious services (including morning and/or evening prayers and Jumah); did not receive Ramadan-compliant halal meals; and was unable to read certain portions of the Quran during Ramadan as instructed by his faith.[7] Booker attributes McDuffie's alleged actions to intentional

---

[7] Courts have held that a prison's failure to accommodate an inmate's special religious diet does not violate the Constitution. *See, e.g., Baranowski v. Hart*, 486 F.3d 112, 121 (5th Cir. 2007) (holding "that denial of a kosher diet does not violate [prisoner's] free exercise rights"). Here, however, Booker contends that he received Ramadan-compliant meals on May 20 and 21, but on May 22, Warden McDuffie removed him from the Ramadan list resulting in, inter alia, the discontinuation of Ramadan meals. He also claims that Warden McDuffie confiscated his Quran while in pre-hearing detention, but did not confiscate the religious materials of inmates associated with other faiths. At this stage, Booker has alleged sufficient facts to state an equal protection claim. *See, e.g., Maye v. Klee*, 915 F.3d 1076, 1085–86 (6th Cir. 2019) (affirming district court's denial of defendant's motion for summary judgment on qualified immunity where prisoner asserted that defendant prevented him from celebrating religious holiday but "permit[ed] other religious sects to participate in analogous religious events").

discrimination. *See* Compl. 10 ("The Muslims on the Formby Unit are being treated differently due to being Muslims."), 12 ("The Fourteenth Amendment means that the government can't discriminate against Muslims nor treat us poorly—because of our beliefs."); Questionnaire 10 (asserting that Warden McDuffie "has made it a policy to deny Muslims access to the chapel and Halal foods"); Tr. 2:10:54–:11:11 (claiming that Warden McDuffie denied him use of the chapel not on logistical concerns—Booker avers the chapel was available on Fridays during the time Muslims were permitted to worship—but based on intentional discrimination of Muslims).

In consideration of the foregoing allegations, which the Court accepts as true at this stage of the litigation, Booker has pleaded sufficient facts to survive preliminary screening on his equal protection claim. *See Maye*, 915 F.3d 1085–86; *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 863 (5th Cir. 2004) (quoting *Muhammad v. Lynaugh*, 966 F.2d 901, 903 (5th Cir. 1992)) (explaining that a prisoner must demonstrate "purposeful discrimination resulting in a discriminatory effect among persons similarly situated" to succeed on an equal protection claim); *Adkins v. Kaspar*, Civil Action No. 6:01-CV-244-JH, Order to Answer, ECF No. 6 (E.D. Tex. June 12, 2001) (directing defendants to answer based on, inter alia, prisoner's claim that defendants permitted Muslims to worship two times per week and celebrate all holy days but only permitted him, as member of the Yahweh Evangelical Assembly, to worship one time per month); *see also Boyd v. McGuire*, Civil Action No. 08-5486 (WJM), 2009 WL 1299630, at *1, *3 (D. N.J. May 5, 2009) (permitting prisoner's equal protection claim to proceed beyond screening "for purposes of developing a factual record for application of the *Turner* analysis," where prisoner alleged that the defendant provided a vegetarian diet to Muslim prisoners but served Jewish prisoners a kosher diet that included meat—i.e., that the defendant treated two similarly situated groups differently).

### D. Retaliation

To assert a viable retaliation claim, Booker must demonstrate the following: "(1) the existence of a specific constitutional right; (2) the defendant's intent to retaliate for the exercise of that right; (3) a retaliatory adverse act; and (4) causation." *Freeman*, 369 F.3d at 863 (citing *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995)). "The inmate must allege more than his personal belief that he is the victim of retaliation." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) (citing *Johnson v. Rodriguez*, 110 F.3d 225, 231 (5th Cir. 1998)). "To substantiate a claim of retaliation, '[t]he inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred.'" *Haddix v. Kerss*, 203 F. App'x 551, 554 (5th Cir. 2006) (quoting *Woods*, 60 F.3d at 1166). A prisoner's mere conclusory allegations of retaliation are insufficient to support a claim for retaliation. *Jones*, 188 F.3d at 325.

Booker contends that Warden McDuffie retaliated against him for verbally lodging complaints (Booker asserts he spoke with McDuffie approximately ten times) and filing grievances concerning his alleged religious deprivations, e.g., use of the chapel for worship, the provision of Ramadan meals, etc. Compl. 11; Questionnaire 21–23; *see Gonzales v. Gross*, No. 18-20480, 2019 WL 3059724, at *2 (5th Cir. July 11, 2019) (quoting *Brown v. Taylor*, 911 F.3d 235, 245 (5th Cir. 2018)) ("Filing a grievance is a constitutionally protected activity . . . ." (alteration in original)). Booker also attributes his January 22 through January 31, 2018, transfer to the Wheeler Unit (which did not have Islamic services), as well as the May 2018 confiscation of his property and removal from the Ramadan list, as retaliatory acts for filing grievances and speaking with Warden McDuffie regarding Muslims' use of the chapel. *See* Questionnaire 17–19; Tr. 2:15:38–:55.

The question of whether Booker has stated facts sufficient to survive screening based on his claim of retaliation is a close one. Considering, however, the specificity of his factual assertions and applying a plausible interpretation of the chronology of events, the Court finds that Booker has pleaded sufficient facts to proceed beyond screening. *See, e.g., Gonzales*, 2019 WL 3059724, at *2–3 (explaining that prisoner sufficiently set forth a chronology of events from which retaliation could be inferred where he claimed that officials wrongfully placed a disciplinary code on him in retaliation for filing a grievance); *McBride v. Ausbie*, No. 3:14–CV–317–M, 2014 WL 5032720, at *4 (N.D. Tex. Oct. 8, 2014) (recommending prisoner's retaliation claim survive summary dismissal, where prisoner contended that after writing a grievance against defendant, the defendant issued disciplinary charges, "put clear hand cleaner" on his food, and verbally threatened him).

Given the timeframe set forth by the district judge in the referral order, it appears prudent to transfer the case back to the district judge for implementation of a scheduling order. Accordingly, it is the **RECOMMENDATION** of the magistrate judge that a scheduling order should be entered, setting dates certain for pretrial deadlines and filing dispositive motions.

It is therefore **ORDERED** that the transfer of this case to the United States Magistrate Judge is terminated and the case is hereby transferred back to the docket of the United States District Judge. This case shall hereinafter be designated as Civil Action Number 5:18-CV-208-C.

## II.   Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2017); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific

finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: August 29, 2019

D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE